**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GWEN BOCCHINFUSO,** *et al.,* *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> **THE WONDERFUL COMPANY LLC**, <br><br> Defendant. | Civil Action No. 24-8005 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant The Wonderful Company, LLC ("Defendant"). ("Motion", ECF No. 23.) Defendant filed a brief in support of its motion. ("Moving Br.", ECF No. 23-1.) Plaintiffs Gwen Bocchinfuso and James Brendle (collectively, "Plaintiffs") filed a brief in opposition ("Opp'n Br.", ECF No. 27) and Defendant filed a reply ("Reply", ECF No. 28).

     The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT IN PART and DENY IN PART** the Motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

     This is a class action suit for violations of the New Jersey Consumer Fraud Act, breaches of warranty, and negligence. (*See generally* Amended Complaint ("Am. Compl."), ECF No. 16.)

1

Defendant advertises, markets, sells, and distributes bottled water throughout New Jersey and the United States, under the brand name Fiji Water ("the Product"). (*Id.* ¶¶8–9.) Plaintiffs allege that the Product contained "manganese and several strains of bacteria," rendering them unsafe to drink. (*Id*. ¶¶9–11.) As a result, the product was—at the time of the filing of the Amended Complaint—in the process of being recalled. (*Id.* ¶13.)

Plaintiff Bocchinfuso orders approximately eight cases of the Product per month from Amazon.com and received a contaminated case around January or February 2024. (*Id.* ¶¶21–23.) Plaintiff Brendle also orders cases of the Product regularly from Amazon.com, and received a contaminated case in February 2024. (*Id.* ¶¶24–25.) Together, Plaintiffs allege that they were misled into making their purchases on the belief that the water was safe to consume. (*Id*. ¶16.) Accordingly, Plaintiffs allege that they received less than the benefit of their bargain because they received than what was promised—a consumable product—and they lost the entire value of the purchase because the product cannot be used for its purpose, i.e., consumption. (*Id*. ¶¶17–18.)

Plaintiffs originally filed their putative class action Complaint in the Superior Court of New Jersey, Monmouth County, on June 21, 2024.[1] (*See* Notice of Removal, ECF No. 1.) Defendant removed this matter on July 24, 2024, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453.[2] (*See id.* at 2.) On September 30, 2024, Plaintiffs filed an Amended Complaint. (*See* ECF No. 16.) The parties later stipulated to dismissal of Plaintiffs' claim under the Magnusson-Moss Warranty Act (Count II). (ECF No. 22.)

---

[1] Plaintiffs bring this action on behalf of themselves and a proposed class defined as, "[a]ll persons within the United States who purchased Products from Defendant within six years prior to the filing of the original Complaint through the date of class certification." (*Id.* ¶32.) Plaintiffs also propose a sub-class of "[a]ll persons within the State of New Jersey who purchased Products from Defendant within six years prior to the filing of the original Complaint through the date of class certification." (*Id.* ¶33.)

[2] CAFA provides that a class action may be removed to federal court if: (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed plaintiff class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(2), (5)–(6).

After the stipulation of dismissal, Plaintiffs assert four claims: Violation of the New Jersey Consumer Fraud Act ("CFA") (Count I); Breach of Implied Warranty of Merchantability (Count III); Breach of Express Warranty (Count IV)[3]; and Negligence (Count V)

## II. SUBJECT MATTER JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) insofar as the amount in controversy exceeds $5,000,000.00 and the named plaintiffs are citizens of a state different from Defendant.

## III. LEGAL STANDARD

A district court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The

---

[3] Plaintiffs appear to mislabel Count IV as a second claim for "Breach of Implied Warranty of Merchantability." The Court construes Count IV instead as a Breach of Express Warranty because the Amended Complaint already asserts a claim for breach of implied warranty and because allegations in Count IV contain express-type language. (*See* Am. Compl. ¶61 ("Defendant expressly represented"); ¶62 ("Defendant breached its express warranty").)

"defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.     DISCUSSION

### A.     CONSUMER FRAUD ACT (COUNT I)

"To state a claim under the CFA, an individual must plead an unlawful practice, an ascertainable loss, and a causal relationship between the two." *Robey v. Sparc Group, LLC*, 256 N.J. 541, 555 (2024) (citations omitted). Defendant challenge the adequacy of Plaintiffs' pleading as to the first two elements.

#### 1.     No Unlawful Practice

Defendant argues that Plaintiffs fail to allege an unlawful practice within the meaning of the CFA, i.e., any specific misrepresentation or any specific deceptive conduct by Defendant that is the type prohibited by the CFA. (Moving Br. at 3.)

In response, Plaintiffs maintain that their CFA claim adequately alleges Defendant's retention of the monies paid for the adulterated products,[4] and that this is unconscionable. (Opp'n Br. at 5–6).

Defendant replies that Plaintiffs fail to cite any authority for the proposition that the sale of unintentionally contaminated food or beverages rises to the level of unconscionability. Defendant points to cases observing that unconscionability requires something more than what Plaintiffs allege here. (Reply at 2–3) (citations omitted).

---

[4] Plaintiffs' opposition argues that they "have alleged that Defendant has . . . retained monies it gained from selling products." Opp'n Br. at 6. The Amended Complaint, however, does not contain this explicit allegation. (*See generally* Am. Compl.) It is unlikely that Plaintiffs could make this allegation, given that there appears to be no dispute that Defendant voluntarily issued a product recall and offered customers a refund. To the extent that it could nevertheless be reasonably inferred from the Amended Complaint that Defendant kept Plaintiffs' purchase money, the Court finds for the reasons set forth herein that this does not constitute unconscionable conduct that would satisfy the unlawful practice element required to plead a claim under the CFA.

a)     Not Unconscionable

"The standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994) (citation omitted). "However, a breach of warranty, or any breach of contract, is not per se unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute." *Id.* (citation omitted) (interior quotation marks omitted). "Because any breach of warranty or contract is unfair to the non-breaching party, the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach." *Id.* (citations omitted).

Here, the Court finds Plaintiffs' allegations that Defendant retained their purchase monies is, in substance, a breach of contract/breach of warranty claim. The Amended Complaint lacks any of the substantially aggravating circumstances required under New Jersey law for a CFA claim. Without them, Plaintiffs' CFA claim falls well short of the standard for unconscionability.

b)     Not a Violation of CFA Regulations

In response to Defendant's challenge to their pleading as to an unlawful practice, Plaintiffs also argue that their CFA claim adequately alleges a violation of New Jersey law insofar as Defendant's sales of the Product constitutes a prohibited sale of adulterated products under N.J.S.A § 24:5-1.[5] (Opp'n Br. at 5–6; *see also* Am. Compl. ¶41.) Defendant responds that the sale of adulterated products is not a regulatory violation within the scope of the CFA. (Reply at 3.)

---

[5] Title 24 of New Jersey's statutes pertains to food and drugs. N.J.S.A. § 24:5-1 is entitled "Sale, distribution or manufacture of misbranded articles" and states: "No person shall distribute or sell, or manufacture for distribution or sale, or have in his possession with intent to distribute or sell, any food, drug, cosmetic or device which under any of the provisions of this subtitle is adulterated or misbranded."

The statutory language of the CFA contemplates three categories of unlawful conduct, the third of which is regulatory violations. N.J.S.A. 56:8–2; *Cox*, 138 N.J. at 17–19; *Stoecker v. Echeverria*, 408 N.J. Super. 597, 623 (App. Div. 2009). This third category is based on regulations enacted under N.J.S.A. 56:8–4. *Cox*, 138 N.J. at 17; *see also* N.J.S.A. 56:8–4 (authorizing the State Attorney General to promulgate rules and regulations "[t]o accomplish the objectives" of the CFA); *Stoecker*, 408 N.J. Super at 623 (citing N.J.S.A. 56:8–4).

At least two decisions in this district have also observed that rules or regulations outside those promulgated by the New Jersey Attorney General to accomplish the objectives of the CFA cannot serve as the basis for a claim under the CFA. *Cooney v. BAC Home Loans Servicing*, Civ. No. 10-4066, 2012 WL 13042680, at *8 (D.N.J. March 28, 2012) (finding that plaintiffs could not rely on an alleged violation of a federal regulation limiting attorney's fees in connection with reinstatement of a mortgage loan); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 n.2 (D.N.J. 2011) (finding FDA regulations as to food and drug not applicable to consideration of a CFA claim because "only a violation of regulations enacted under N.J.S.A. 56:8–4 can serve as a basis for a claim of an unlawful practice under the NJCFA.") (citing *Cox*).

Consistent with the above authorities, the Court finds that an alleged violation of N.J.S.A § 24:5-1 does not constitute a regulatory violation of the CFA. The Court therefore finds that Plaintiffs cannot rely on N.J.S.A § 24:5-1 to plead their CFA claim.

### 2. No Ascertainable Loss

Given that Plaintiffs rejected a proffered refund, Defendant separately argues that Plaintiffs have also failed to plead an ascertainable loss. (Moving Br. at 6.) Defendant construes Plaintiffs' claim as relying on a "benefit of the bargain" theory, but argues this theory fails because, under New Jersey Supreme Court authority, "plaintiffs who do not claim they attempted to return the items or that [the retailer] refused to accept such a return" are "insufficient to establish an out-of-

6

pocket loss." (*Id*. at 6–7.) In Defendant's view, the parties' bargaining included an offer of a full refund in the event of a recall. (*Id*. at 7.) A plaintiff who declines a refund or replacement proactively offered by a merchant as part of the benefit of that bargain cannot state an ascertainable loss. (*Id*.)

Plaintiffs insist they have pled an ascertainable loss because they allege that: 1) the benefit of the bargain they paid money for was to receive premium drinking water, 2) they paid Defendant; and 3) they received instead adulterated water. (Opp'n Br. at 8.) Plaintiffs argue that their ascertainably loss is therefor the price of the Product they paid to Defendant while receiving nothing in return. (*Id*. at 8–9.) Plaintiffs deny that a refund offer was a part of the parties' bargain and argue that this distinguishes their case from cases where no ascertainable loss was found because a warranty was part of a contract of sale. (*Id*. at 9.)

On reply, Defendant objects to Plaintiffs' attempt to insert a baseless requirement that a refund offer be made at the time of sale. (Reply at 4.)

New Jersey law recognizes two means to establish ascertainable loss: "out of pocket loss or a deprivation of the benefit of one's bargain." *Robey*, 236 N.J. at 548. "Out-of-pocket damages represent the difference between the price paid and the actual value received." *Id*. (citations and interior quotation marks omitted.) "[B]enefit-of-the-bargain principles allow recovery for the difference between the price paid and the value of the property had the representations been true." *Id*. (citations and interior quotation marks omitted.)

Although Plaintiffs repeatedly invoke the phrase "benefit of the bargain" in their Amended Complaint and their briefing, they appear to do so improperly. In relevant part, the Amended Complaint alleges that:

7

- "Plaintiffs received less that the benefit of the bargain they paid money for, namely the Products they received are worth less than the Product promised by Defendant because Plaintiffs cannot actually consume the Product."  (Am. Compl. ¶17.)

- "Plaintiffs lost the entire value of the Products they purchased because the Products cannot be used for personal consumption, which is the purpose of the Products." (*Id*. ¶18.)

- "As a result of Defendant's sale of contaminated Products, Plaintiffs and the Classes have not received the benefit of the bargain they paid money for, namely that the Products could be consumed safely." (*Id*. ¶28.)

- "Plaintiffs and the Class Members have suffered an ascertainable loss of money as a result of receiving products they cannot consume, as those Products are not worth the money Plaintiffs paid for them."  (*Id*. ¶29.)

In substance, Plaintiffs are not pleading deprivation of the benefit of their bargain because, paraphrasing *Robey*, they are not alleging a difference between the price they paid for the Product and the value of the Product *as promised*.  They are instead pointing to a difference between the price they paid for the Product and the value of the Product *they received*.  Under *Robey*, this is Plaintiffs' out of pocket loss, not a deprivation of the benefit of their bargain.

The distinction is meaningful because, as Defendant argues, *Robey* also includes language that is both controlling and fatal to Plaintiffs' ability to plead an ascertainable loss by virtue of their out-of-pocket loss:

> [P]laintiffs allege that they suffered an out-of-pocket loss of the purchase price because they either would not have bought the items at the prices that they ultimately paid, or they would not have purchased the goods at all but for defendant's misleading and deceptive advertising. Although plaintiffs allege that they never would have purchased the items, plaintiffs do not claim that they

8

> attempted to return the items or that [the merchant] refused to accept such a return. The facts as pled are thus insufficient to establish an out-of-pocket loss.

256 N.J. at 560.

Based on this clear and explicit language from *Robey*, the Court finds that Plaintiffs in this case do not plead an out-of-pocket loss and therefore do not plead an ascertainable loss.

Insofar as Plaintiffs plead neither an unlawful practice nor an ascertainable loss, the Court further finds that they do not plead a plausible claim for violation of the CFA. The Court will therefore dismiss without prejudice the claim for violation of the CFA (Count One).

**B.    BREACH OF IMPLIED WARRANTY (COUNT III)**

Defendant argues that Plaintiffs' claim for breach of implied warranty of merchantability should be dismissed because Plaintiffs do not allege how much manganese is present in the Product or what concentration would be potentially injurious to health. (Moving Br. at 5.) Defendant notes that the relevant USA Today article cited by the Amended Complaint states that the FDA classified the recall of the Product as the lowest level of seriousness, which is appropriate for a product that "is not likely to cause adverse health consequences." (*Id.*)

Plaintiffs respond that they are not required to plead that the manganese and bacteria are potentially harmful if consumed. (Opp'n Br. at 6.) Plaintiffs argue that they need only allege that the contamination was material to the transaction. (*Id.*) (citing *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231, 238–39 (3d Cir. 2020).

On reply, Defendant reiterates their criticism of Plaintiffs' failure to support their assertion that "incidental manganese" satisfies even their proposed the materiality standard. (Reply at 5.)

The parties' briefing fails to connect on the relevant points with respect to Plaintiffs' breach of warranty claim. Whether the contamination is "material" does not factor into Plaintiffs' breach of warranty claim. Plaintiffs' reliance on *Sun Chemical* is misplaced because that case does not

9

address a breach of implied warranty claim. The language from *Sun Chemical* cited by Plaintiffs in their opposition pertains to a CFA claim. That language states the well-recognized principle that a misrepresentation forming the basis of a CFA claim cannot be just any misrepresentation; it must be one "material to the transaction" between the parties. *Sun Chem.*, 981 F.3d at 238–239. Because the considerations for a breach of implied warranty claim are different, the Court begins with the relevant law in New Jersey.

"[T]he UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are fit for the ordinary purposes for which such goods are used." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011) (quoting N.J.S.A. § 12A:2–314(f)); *Henderson v. Volvo Cars of N. Am., LLC*, Civ. No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010)). This implied warranty of merchantability applies to food and drink. N.J.S.A. 12A:2-314 ("a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.")

An implied warranty of merchantability "provides for a minimum level of quality." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (internal quotation marks and citations omitted). "[M]erchantability is defined as the product sold should be of the general kind described and reasonably fit for the *general* purpose for which it should have been sold." *Id.* (quoting *Ferrari v. Am. Honda Motor Co., Inc.*, A-1532-07T2, 2009 WL 211702 at *3 (App. Div. Jan. 30, 2009)) (internal quotation marks and citations omitted) (emphasis added).

Generally, a court will find a product to be unfit for its ordinary purpose "when [it] can identify one of three general types of defects: manufacturing defects, design defects, and failure to give the buyer proper instructions with respect to the goods." *Id.* This test for defects is essentially the same as that required when the theory is strict tort liability under Section 402A of the Restatement (Second) of Torts, except that goods may violate [the implied warranty of merchantability] without being "unreasonably dangerous," as is generally required under strict tort." *Lieberson*, 865 F. Supp. 2d at 542 (citation omitted).

The "ordinary purpose" of a product is one that is central to the product's value or function. *See Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011) (rejecting implied warranty of merchantability claim that a single-cup brewing system, although it brewed beverages, failed to brew precisely one cup); *Lieberson*, 865 F. Supp. 2d at 543 (finding no breach of the implied warranty of merchantability where soap and lotion did not help babies sleep, as advertised, because the soap was "clearly manufactured for the purpose of washing and moisturizing babies' skin" and it did do that).

Here, at the risk of stating the obvious, the ordinary purpose of bottled drinking water is to provide drinkable water. Defendant makes much of the paucity of Plaintiffs' allegations with respect to manganese, but Plaintiffs also allege bacterial contamination and include as part of their Amended Complaint color images of the Product that show readily visible brown particulate matter floating in the water and collected at the bottom of a sample bottle. (Am. Compl. ¶20.) Whether this defect was the result of a design defect or a manufacturing defect is not yet clear. Nevertheless, based on these allegations—and the application of some measure of common sense—the Court finds that Plaintiffs have stated a claim for breach of the implied warranty of merchantability.

For these reasons, the Court will deny the portion of the Motion seeking to dismiss the claim for breach of implied warranty (Count III).

### C.     BREACH OF EXPRESS WARRANTY (COUNT IV)

Defendant argues that Plaintiffs' claim for breach of express warranty should be dismissed because it fails to identify any specific statement made by Defendant that forms the basis of their claim. (Moving Br. at 7.) Plaintiffs counter that a product description is part of the basis of a bargain and creates an express warranty that the goods will conform to that description. (Opp'n Br. at 9.) They allege that Defendant sold the Product as drinking water, but the Product was contaminated and undrinkable. (*Id*. at 10.)

Under New Jersey law, "to state a claim for breach of express warranty, [p]laintiffs must properly allege: (1) that [d]efendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013) (citing N.J. Stat. Ann. § 12A:2-313). Thus, "an express warranty is created when a promise is made by a seller to a buyer which relates to a good and becomes the basis of the bargain." *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.,* 171 F.3d 818, 824 (3d Cir.1999).

Here, the only contention regarding an express warranty breach is the conclusory assertion that Defendant "expressly represented that the Products contained drinking water." (Am. Compl. ¶61.) This is a bald assertion that fails to identify any specific affirmations or promises made by Defendant. The Amended Complaint also contains no factual allegations showing that any express warranties were part of the basis of the parties' bargain. Thus, the breach of express warranty claim cannot survive a motion to dismiss. *See Simmons v. Stryker Corp.*, Civ. No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) (dismissing without prejudice a claim was "devoid of

any 'factual matter' to support the existence of an express warranty"); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 707 (D.N.J. 2011) (same); *Fishman v. Gen. Elec. Co.*, Civ. No. 12-585, 2013 WL 1845615, at *5 (D.N.J. Apr. 30, 2013) (dismissing without prejudice for failure to identify in amended complaint any specific affirmations of fact or promises).

For these reasons the Court will dismiss without prejudice the claim for breach of express warranty (Count IV).

### D. NEGLIGENCE (COUNT V)

Defendant seeks dismissal of Plaintiffs' claim for negligence because it fails to allege a special relationship between the parties giving rise to any duty. (Moving Br. at 8–9.) Plaintiffs maintain that only a duty is required, not a special relationship. (Opp'n Br. at 10.)

The principal allegations underlying Plaintiffs' negligence claim are set forth below.

- Defendant had a duty of care to ensure that the Products it sold were potable water at the time Defendant sold the Products. (Am. Compl. ¶65.)

- Defendant failed to exercise ordinary care regarding its Product manufacturing process by, among other things, failing to ensure the Products were contained [sic] drinkable water when the products were sold, and failing to notify Plaintiffs of the true content of the Products. (Am. Compl. ¶66.)

- As a proximate result of the negligence of Defendant, Plaintiffs received Products that were not safe to consume and were therefore deprived of the money they spent on the Products. (Am. Compl. ¶67.)

To the extent that Plaintiffs attempt to plead negligence on the basis of Defendant's "failing to notify Plaintiffs of the true content of the Products," the Court construes this as a claim for negligent misrepresentation arising from an alleged breach of omission. Negligent

misrepresentation claims premised on a breach of omission require a plaintiff to allege that the defendant possessed a duty to disclose. *Schechter v. Hyundai Motor America*, Civ. No. 18-13634, 2020 WL 1528038, at *15 (D.N.J. March 31, 2020) (citations omitted).

"In New Jersey, three kinds of limited relationships give rise to a duty to disclose, including: (1) where a fiduciary relationship exists between the parties, (2) where the transaction itself calls for perfect good faith and full disclosure, or (3) where one party expressly reposes a trust and confidence in the other." *Id*. (interior quotation marks and citations omitted). "In the absence of such allegations, courts in this district have not hesitated to dismiss negligent misrepresentation claims by a purchaser against a manufacturer." *Id*. (interior quotation marks and citations omitted).

Here, Plaintiffs have not pled the required relationship with Defendant that would give rise to a duty to disclose. Accordingly, the Court will dismiss without prejudice the claim for negligence (Count V).

### E. PLAINTIFFS' CLAIMS NOT SUBSUMED BY THE NEW JERSEY PRODUCT LIABILITY ACT

Finally, Defendant argues that Plaintiffs' claims for violation of the CFA, breach of implied warranty of merchantability, and negligence are subsumed by the New Jersey Product Liability Act ("PLA"), N.J.S.A. 2A:58C-1b(3). Defendant cites the intent of the PLA: to establish the exclusive remedy for claims seeking damages for harm caused by a product's manufacturing, design, or warning defects. (Moving Br. at 9.) Defendant contends that because Plaintiffs allege a product defect these claims must be brought under the PLA. (*Id*.) In Defendant's view, Plaintiffs cannot avoid the PLA by arguing their harm is purely economic. (*Id*. at 11.)

Plaintiffs distinguish the CFA from the PLA, and maintain that it is clear from the language of the PLA itself that it does not encompass claims that are not related to product injury. (Opp'n

14

Br. at 10–11.) Plaintiffs emphasize that they are seeking economic injuries stemming from money lost on their purchase of the Products, not for any personal injury caused by the Products. (Id. at 12–13.)

The PLA was enacted by the New Jersey Legislature in 1987 "based on an urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 62 (2008) (citing N.J.S.A. 2A:58C–1(a)). A product liability action is statutorily defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C–1(b)(3). The PLA further defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. 2A:58C–1(b)(2); *see also Sun Chem. Corp. v. Fike Corp.*, 981 F.3d at 236 (3d Cir. 2020) (citing N.J. Stat. Ann. § 2A:58C-1(a)) ("The PLA is more limited in scope: it codifies certain "actions for damages for harm caused by products.")

Here, as Plaintiffs argue, their claims do not assert harms *caused by a product*. Their claims instead assert deficiencies in the Product itself and the economic injury of purchasing the product. The various authority that Defendant cites for its position are consistent with Plaintiffs' distinction. *See Sinclair v. Merck & Co.*, 195 N.J. 51 (2008) (asserting claims for injuries caused by patients taking Vioxx (refecoxib)); *Nicholson v. Bloomin Brands, Inc.*, No. A-3739-16T1, 2018 WL 3614355 (App. Div. July 30, 2018) (asserting claims for injuries caused by consuming contaminated foods); *Cornett v. Johnson & Johnson*, 998 A.2d 543 (App. Div. 2010) (asserting

15

claims for injuries caused by drug-eluting stent). Accordingly, the Court finds that, given the specific nature of Plaintiffs' claims, they fall outside the scope of the PLA, and are therefore not subsumed by it.

## V. CONCLUSION

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART the Motion. Plaintiffs will be given leave to file a Second Amended Complaint to address the deficiencies identified herein. An appropriate Order will follow.

Date: **July 25, 2025**

                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**